# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Voters Alliance; Minnesota Freedom Council; Sondra Erickson; Montgomery Jensen; Ron Kaus; Jodi Lyn Nelson; Sharon Stene, as the guardian and friend for James Stene; Richard M. Smisson; and Kathleen M. Olson, | Civil No. 12-519 (DWF/LIB) |

Plaintiffs,

v.

**MEMORANDUM
OPINION AND ORDER**

Mark Ritchie, individually and in his official
capacity as Secretary of State for the State of
Minnesota, and his successors; Lori Swanson,
individually and in her official capacity as the
Minnesota Attorney General, and her successors;
Joe Mansky, individually and in his official capacity
as the Elections Manager for Ramsey County,
Minnesota, and his successors; John J. Choi,
individually and in his official capacity as the County
Attorney for Ramsey County, Minnesota, and his
successors; Laureen E. Borden, individually and in
her official capacity as the Auditor-Treasurer for
Crow Wing County, Minnesota, and her successors;
Donald F. Ryan, individually and in his official
capacity as County Attorney for Crow Wing, Minnesota;
Dennis J. Freed, individually and in his official capacity
as the Auditor for Chisago County, Minnesota, and his
successors; and Janet Reiter, individually and in
her official capacity as County Attorney for Chisago
County, Minnesota and her successors,

Defendants.

_____

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Mohrman & Kaardal, P.A.,
counsel for Plaintiffs.

Nathan J. Hartshorn, Assistant Attorney General, Minnesota Attorney General's Office, counsel for Defendants Mark Ritchie and Lori Swanson.

Kyle M. Thomas and Robert B. Roche, Assistant Ramsey County Attorneys, Ramsey County Attorney's Office, counsel for Defendants Joe Mansky and John J. Choi.

Jessica E. Schwie, Esq., Mark K. Hellie, Esq., and Jamie L. Guderian, Esq., Jardine Logan & O'Brien PLLP, counsel for Defendants Laureen E. Borden, Donald F. Ryan, Dennis J. Freed, and Janet Reiter.

Barnett I. Rosenfield, Esq., and Justin M. Page, Esq., Minnesota Disability Law Center, counsel for Amicus Minnesota Disability Law Center.

_____

## INTRODUCTION

This matter is before the Court on Defendants' Motions to Dismiss (Doc. Nos. 5, 8, 10, 28) and Plaintiffs' Motion for Summary Judgment (Doc. No. 13). For the reasons set forth below, the Court grants Defendants' Motions to Dismiss and denies as moot Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

Plaintiffs include seven individuals registered to vote in Minnesota elections and two organizations that represent persons eligible to vote.[1] (Doc. No. 3, Am. Compl.

---

[1]     Plaintiffs Minnesota Voters Alliance and Minnesota Freedom Council are member associations concerned with issues relating to election processes and election integrity issues. (Doc. No. 3, Am. Compl. ¶¶ 10-11.) Plaintiff Sondra Erickson is an elected official with the Minnesota State House of Representatives and "intends to be a candidate in the 2012 general election." (Id. ¶ 7.) Plaintiff Montgomery Jensen is a resident of Crow Wing County, Minnesota, and "intends to run for an elected office as a candidate in the 2012 general elections." (Id. ¶ 8.) Plaintiff Ron Kaus is a resident of Duluth, Minnesota, and was a resident of Crow Wing County prior to 2012. (Id. ¶ 12.) Plaintiff Jodi Lyn Nelson is a resident of Maplewood, Minnesota, and "intends to run for elected office in the November 2012 general elections." (Id. ¶ 13.) Plaintiff Sharon Stene is a

(Footnote Continued on Next Page)

¶ 85.)  Defendants are various Minnesota state and county officials responsible for election administration or enforcement of election laws.  (*Id.* ¶¶ 16-23.)  Plaintiffs generally assert that Defendants wrongfully permitted the votes of election day registrants ("EDRs") to be counted in the 2008 and 2010 elections without first confirming the EDRs' eligibility to vote.  (*Id.* ¶ 2.)  Plaintiffs seek injunctive relief requiring Defendants to confirm the eligibility of all EDRs before permitting their ballots to count in the November 2012 election and any election thereafter.  (*Id.* ¶ 3.)

According to Plaintiffs, in the 2008 election, EDRs cast 542,257 votes of the 2,921,498 total votes counted in Minnesota.  (*Id.* ¶ 39.)  Plaintiffs allege that, after the 2008 election, the State and counties failed to verify whether 48,545 of the 542,257 EDRs were entitled to vote.  (*Id.* ¶ 34.)  Plaintiffs assert that, in the 2010 election, EDRs cast 227,857 votes of the 1,996,074 total votes counted in Minnesota.  (*Id.* ¶ 43.)  Plaintiffs claim that, after the 2010 election, the State and counties failed to verify whether 7,691 of the 227,857 EDRs were entitled to vote.  (*Id.* ¶¶ 44-45.)

On February 28, 2012, Plaintiffs initiated this lawsuit.  (Doc. No. 1, Compl.)  Plaintiffs filed an Amended Complaint on March 13, 2012.  (Am. Compl.)  In their Amended Complaint, Plaintiffs assert four causes of action against all Defendants: (1) "Violation of the right of association under the First Amendment of the U.S.

---

(Footnote Continued From Previous Page)
resident of Merrifield, Minnesota, and the legal guardian of James Stene.  (*Id.* ¶ 9.)  Plaintiff Richard M. Smisson is a resident of Harris, Minnesota, and has served as Harris's Mayor and as an election judge.  (*Id.* ¶ 14.)  Plaintiff Kathleen M. Olson is a
(Footnote Continued on Next Page)

Constitution and rights of equal protection under the Fourteenth Amendment of the U.S.

Constitution"; (2) "Violation of [the] Due Process Clause of the Fifth and Fourteenth

Amendments of the U.S. Constitution"; (3) "The waiver of Minnesota constitutional

entitlement requirements on election day violates the First, Fifth, and Fourteenth

Amendments of the U.S. Constitution"; and (4) "Article VII, § 1 of the Minnesota

Constitution violates the Equal Protection and Due Process Clauses of the U.S. and

Minnesota Constitutions[,] and Minn. Stat. §§ 524.5-301, et seq. violates the Due Process

Clause of the U.S. Constitution."  (*Id.* ¶¶ 80-128.)  All Defendants have moved to dismiss

the claims against them.  (Doc. Nos. 5, 8, 10, 28.)  Plaintiffs have also moved for

summary judgment against Defendants.  (Doc. No. 13.)

## DISCUSSION

### I.   Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all

facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th

Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City

of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint,

(Footnote Continued From Previous Page)
resident of Harris and has served as an elected official on the Harris City Council and as
an election judge.  (*Id.* ¶ 15.)

matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the U.S. Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.    Motions to Dismiss

Defendants argue that Plaintiffs' claims must be dismissed because Plaintiffs have failed:  (1) to state a claim upon which relief may be granted; (2) to exhaust state law remedies; and (3) to assert a valid basis on which to contest the constitutionality of Minnesota's voter eligibility provisions for persons under guardianship.[2] (*See* Doc.

---

[2]    Defendants also argue that the Amended Complaint must be dismissed because Plaintiffs' claims are barred pursuant to the doctrines of qualified immunity, absolute prosecutorial immunity, and Eleventh Amendment immunity. (*See* Doc. Nos. 30, 32, 33, 34.) Because the Court finds that Plaintiffs have failed to state a claim, have failed to exhaust their state law remedies, and lack standing to contest the constitutionality of

(Footnote Continued on Next Page)

Nos. 30, 32, 33, 34.)  Because the Court finds that Plaintiffs have failed to assert a valid

claim against any Defendant and have failed to exhaust state law remedies, the Amended

Complaint must be dismissed in its entirety.  In addition, Count IV must be dismissed

because the Court finds that Plaintiffs lack standing to contest the constitutionality of

Minnesota's voter eligibility provisions for persons under guardianship.

### A.      Failure To State A Claim

As a preliminary matter, the Court finds that Plaintiffs have failed to state a claim

against Defendants upon which relief may be granted.  Plaintiffs have not raised a

cognizable claim under either the federal or state constitutions, nor have they alleged a

violation of any federal or state law.

Although Plaintiffs have not specifically articulated a claim pursuant to 42 U.S.C.

§ 1983, Plaintiffs argue that this Court should read into the Amended Complaint that they

have asserted a cause of action that meets the requirements of 42 U.S.C. § 1983.[3]  (Doc.

No. 61 at 19-21.)  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:

(1) a right secured by the Constitution or laws of the United States was violated; and

(2) the alleged violation was committed by a person acting under the color of state law.

---

(Footnote Continued From Previous Page)
Minnesota's voter eligibility provisions for persons under guardianship, the Court need
not reach the issue of immunity.

[3]      42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction thereof
to the deprivation of any rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law . . . ."  42 U.S.C. § 1983.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds by *Daniel v. Williams*, 474 U.S. 327, 330-31 (1986).

Plaintiffs cannot establish that Defendants violated any constitutionally protected right. In the Amended Complaint, Plaintiffs assert violations of the First, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution. (Am. Compl. ¶¶ 80-128.) The crux of Plaintiffs' constitutional claims is that the votes of eligible voters are diluted by the votes of ineligible EDRs. (Doc. No. 61 at 7-8, 14, 34-35.) Plaintiffs contend that the Minnesota Constitution imposes on election officials an "affirmative obligation to confirm a person's entitlement to vote before permitting that person's ballot to be counted." (Am. Compl. ¶ 88.) Thus, Plaintiffs assert that Defendants have taken insufficient steps to ensure that EDRs are eligible to vote.[4] (*Id.* ¶¶ 111-12.)

---

[4] The Court notes, however, that flawless elections are not constitutionally guaranteed. *See* U.S. Const. art. I, § 4 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators"); *Snowden v. Hughes*, 321 U.S. 1, 11-12 (1944). Minnesota law provides for election day registration. *See* Minn. Stat. § 201.054, subd. 1(2); Minn. Stat. § 201.061, subd. 3. Plaintiffs have not alleged that Defendants failed to comply with any of Minnesota's election laws or regulations. (*See id.*) Moreover, federal courts are not arbiters of voter eligibility disputes in state elections. *Pettengill v. Putnam County R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973). Courts have long held that the Constitution provides the states with broad authority to regulate their election codes, including voter eligibility provisions. *See, e.g.*, *Smiley v. Holm*, 285 U.S. 355, 366 (1932) ("It cannot be doubted that [Article I, Section 4 of the U.S. Constitution] embrace[s] authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, [and] counting of votes . . . .").

To establish a constitutional violation based on voter irregularities, election officials must have engaged in invidious discrimination or intentional misconduct. *See, e.g.*, *Hennings v. Grafton*, 523 F.2d 861, 864-85 (7th Cir. 1975); *Powell v. Power*, 436 F.2d 84, 87-88 (2d Cir. 1970). As the Eighth Circuit has previously held, there is no constitutional basis for a federal court to oversee the administrative details of a state election "in the absence of aggravating factors such as denying the right of citizens to vote for reasons of race, or fraudulent interference with a free election by stuffing of the ballot box, or other unlawful conduct which interferes with the individual's right to vote," or other constitutionally protected right. *Pettengill v. Putnam County R-1 Sch. Dist., Unionville, Mo.*, 472 F.2d 121, 122 (8th Cir. 1973) (citations omitted).

In *Powell*, voters in a congressional primary election alleged that state election officials violated their constitutional rights by allowing ineligible voters to cast ballots, causing the votes of eligible voters to be diluted. *Powell*, 436 F.2d at 85-86. The Second Circuit held that, in the absence of intentional misconduct or discrimination, no federal cause of action existed. *Id.* at 88. In *Pettengill*, residents of a school district alleged that election irregularities deprived them of their right to have their votes undiluted by illegal votes cast in a school board election. *Pettengill*, 472 F.2d at 121. The Eighth Circuit applied the *Powell* rationale and found no constitutional violation. *Id.* at 122. Lastly, in *Hennings*, voters in a general election asserted that state and county officials violated their constitutional rights by inaccurately counting votes with electronic voting devices. *Hennings*, 523 F.2d at 862. The Seventh Circuit held that voting irregularities caused by

8

mechanical or human error and lacking in invidious or fraudulent intent did not rise to the level of a constitutional violation.  *Id.* at 864-85.

Here, Plaintiffs fail to allege any facts that suggest there was any intentional misconduct or discrimination on the part of Defendants.  Nor do they point to any "aggravating factors" as defined by the Eighth Circuit in *Pettengill*.  *See Pettengill*, 472 F.2d at 122.  No allegations contained within the Amended Complaint rise to the level of the constitutionally impermissible "aggravating factors" identified by the Eighth Circuit. *See id.*  For the Court to conclude otherwise would require it to oversee the administrative details of every election, including the State of Minnesota's election machinery and protocol.

Plaintiffs claim that Defendants violated their constitutional rights by failing to verify EDR eligibility before the EDR ballots were counted.  (Am. Compl. ¶¶ 96, 106, 116, 128.)  Plaintiffs also claim the Minnesota Secretary of State treated pre-election registrants[5] differently than EDRs by subjecting pre-election registrants, but not EDRs, to eligibility verification processes via database screening.  (Doc. No. 61 at 29-30.)  Both claims, however, are based on the erroneous premise that election officials must verify voters' eligibility before their votes are counted.  Under Minnesota election statutes, voters themselves certify their eligibility to vote, under threat of criminal prosecution if

---

[5]     "Pre-election registrants" are persons who register to vote more than twenty days before an election.  *See* Minn. Stat. § 201.061, subd. 1.

they do so falsely.[6]  *See* Minn. Stat. § 201.071, subd. 1; Minn. Stat. § 201.054, subd. 2.

Pre-registered voters are required to certify their eligibility to vote on election day by

signing the eligibility statement on their polling place rosters.  Minn. Stat. § 201.221,

subd. 3.  EDRs, by contrast, are not only required to make an oath of eligibility, but they

each must also:  (1) complete a voter registration application; and (2) provide proof of

residence.  *See* Minn. Stat. § 201.061, subd. 3.[7]

Each of the four claims in Plaintiffs' Amended Complaint contains merely

conclusory statements stemming from the principal allegation that Defendants violated

the rights of eligible voters by diluting their votes with the votes of ineligible EDRs.

Even taken as true, the facts alleged in the pleadings cannot establish any violation of the

state or federal constitutions.  Because Plaintiffs have failed to articulate a claim against

any Defendant upon which they may be granted relief, the Amended Complaint must be

dismissed in its entirety.

## B.    Failure to Exhaust Remedies

Even if Plaintiffs had alleged a valid cause of action against Defendants, dismissal

is warranted because Plaintiffs have failed to exhaust their state law remedies.

---

[6]     Plaintiffs do not discuss absentee voters or compare the eligibility certification
process for absentee voters with the process for EDRs.  Under Minnesota law, absentee
voters must also certify their eligibility to vote and face felony charges if they do so
falsely.  *See* Minn. Stat. §§ 203B.03-04.

[7]     In light of these additional requirements, Defendants claim that the registration
process for EDRs is, in fact, more onerous than that required of pre-election registrants.
(*See, e.g.,* Doc. No. 34 at 12-13.)

Federal claims alleging constitutional violations are barred when an adequate state law remedy is, or was, available to correct the claimed harm.  *Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Minnesota law provides a procedure that allows Minnesota residents to challenge the eligibility of a voter prior to the individual casting a vote.  Minn. Stat. §§ 204C.07-12.  Challengers must file a form with the Minnesota Secretary of State stating "the ground for the challenge, a statement that the challenge is based on the challenger's personal knowledge, and a statement that the challenge is made under oath." Minn. Stat. § 204C.12, subd. 2.  Minnesota law also provides a post-election mechanism for claimants to assert complaints about voter registration requirements.  Minn. Stat. § 200.04, subd. 1.  Under Minnesota law, "[t]he secretary of state shall provide a complaint form that requires the signature of the complainant, an affidavit and notarization, and the attachment of any supporting documentation."  *Id*.  Plaintiffs have not filed any complaints against any Defendant with the Minnesota Secretary of State. Plaintiffs admit they did not avail themselves of any remedies provided pursuant to state law, but rather claim that pursuit of such remedies would be futile because "[t]he state remedy process is prospective and not retroactive."  (Doc. No. 61 at 24.)

While futility is an exception to the exhaustion of remedies requirement, the plaintiff bears the burden of proving futility.  *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006); *see Ali v. Ramsdell*, 423 F.3d 810, 814 (8th Cir. 2005) (holding that, in raising a due process challenge under the Fourteenth

Amendment, "the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate") (citation omitted).

The remedies available to Plaintiffs pursuant to state law are not inadequate. Because Plaintiffs could have corrected the claimed harm of ineligible voters' ballots being counted by challenging a voter's eligibility either before or after the individual cast a vote, their assertion of futility fails.[8]  *See* Minn. Stat. §§ 200.04, 204C.12, subd. 3. Therefore, to the extent Plaintiffs' claims arise from Defendants' counting of allegedly "unconfirmed" EDR votes, the Amended Complaint must be dismissed as a result of Plaintiffs' failure to exhaust remedies available to them under state law.[9]

---

[8]     If Plaintiffs had challenged a voter's eligibility prior to the individual casting a ballot, and if the voter had been deemed ineligible under the prescribed procedures, the individual would not have been allowed to vote or, if the individual had marked ballots but had not yet deposited them in the ballot boxes, the marked ballots would have been unopened with the spoiled ballots.  *See* Minn. Stat. § 204C.12, subd. 3.  If Plaintiffs had challenged a voter's eligibility after the individual cast a ballot, pursuant to the dispute process, the Minnesota Secretary of State or the Office of Administrative Hearings would have issued a decision, and, if necessary, a remedial plan.  *See* Minn. Stat. § 200.04. Remedies may include discounting votes, declaring a winner, or other appropriate remedies to correct alleged harms resulting from improperly cast ballots.  *See Coleman v. Ritchie*, 758 N.W.2d 306, 308 (Minn. 2008); *Kearin v. Roach*, 381 N.W.2d 531, 532 (Minn. Ct. App. 1986).

[9]     In addition to the challenge procedures described above, Minnesota law requires the investigation of, and (upon a showing of probable cause) the criminal prosecution of, individuals who have falsified their voter eligibility status.  Minn. Stat. § 201.275 ("A county attorney who is notified by affidavit of an alleged violation of this chapter shall promptly investigate.  If there is probable cause for instituting a prosecution, the county attorney shall proceed by complaint or present the charge, with whatever evidence has been found, to the grand jury.").

## C.    Guardianship Claims

Count IV of Plaintiffs' Amended Complaint challenges the constitutionality of Article VII, § 1 of the Minnesota Constitution and Minnesota Statutes §§ 524.5-301, *et seq.*, pertaining to persons under guardianship.[10]  (Am. Compl. ¶¶ 118-28.)  In particular, Plaintiffs seek:

> (1) to eliminate the inconsistency existing between the statutory laws and the dictates of Article VII, section 1 of the Minnesota Constitution, (2) to address the lack of process to challenge prior to an EDR ballot being counted related to people under unlimited guardianships, and (3) to address the lack of required process by the probate courts to make independent determinations of a potential ward's mental capacity to know the nature and effect of voting versus and juxtaposed to the court's finding a person totally lacking the mental capacity regarding other areas of that person's life that required the petition for guardianship in the first instance (including existing inconsistencies within court orders).

(Doc. No. 82 at 6.)

### 1.    Standing

As a preliminary matter, the Court finds that Count IV of Plaintiffs' Amended Complaint must be dismissed because Plaintiffs lack standing.

---

[10]    Article VII, § 1 of the Minnesota Constitution provides that "[e]very person 18 years of age or more who has been a citizen of the United States for three months and who has resided in the precinct for 30 days next preceding an election shall be entitled to vote in that precinct.  The place of voting by one otherwise qualified who has changed his residence within 30 days preceding the election shall be prescribed by law.  The following persons shall not be entitled or permitted to vote at any election in this state: [a] person not meeting the above requirements; a person who has been convicted of treason or felony, unless restored to civil rights; a person under guardianship, or a person who is insane or not mentally competent."  Minn. Const. art. VII, § 1.

To have standing under Article III of the Constitution, a plaintiff must allege (1) a concrete injury in fact, (2) that is fairly traceable to the challenged action, and (3) that is likely to be redressed by the relief sought.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of," and it must be likely "that the injury will be 'redressed by a favorable decision.'").

The Amended Complaint fails to allege that any Plaintiff has been denied the right to vote by any constitutional provision barring persons under guardianship from voting. (*See* Am. Compl. ¶¶ 7-15, 56, Ex. C.)  Sharon Stene does not have standing to assert an equal protection and due process violation as the guardian[11] of James Stene because James Stene was allowed to vote in the 2010 election and retains his right to vote.[12]  (*See id.* ¶¶ 9, 56, Ex. C.)  Without an allegation that Defendants have denied or foreseeably will deny Plaintiffs their voting rights, Plaintiffs cannot demonstrate a concrete injury in fact required to establish standing to challenge the constitutionality of Minnesota's voter ineligibility provisions.  *See Lujan*, 504 U.S. at 560; *Warth v. Seldin*, 422 U.S. 490, 508 (1975).  Therefore, the guardianship claim outlined in Count IV of Plaintiffs' Amended Complaint must be dismissed for lack of standing.

---

[11]     While Plaintiffs' Amended Complaint asserts that James Stene is a person under "guardianship," the Court notes that the relevant court order subjects James Stene to a "conservatorship."  (Am. Compl. ¶¶ 9, 53, 54, Ex. C.)

[12]     Plaintiffs acknowledge that the conservatorship order "maintained his right to vote."  (Am. Compl. ¶ 57, Ex. C (acknowledging "[t]hat the conservatee retains the right to vote").)

14

2.      *Constitutional Claims*

Count IV of Plaintiffs' Amended Complaint alleges that "Article VII, § 1 of the Minnesota Constitution violates the Equal Protection and Due Process Clauses of the U.S. and Minnesota Constitutions[,] and Minn. Stat. §§ 524.5-301, et seq. violates the Due Process Clause of the U.S. Constitution."  (*Id.* ¶¶ 118-28.)  Plaintiffs seek to eliminate what they claim to be the "inconsistency existing between the statutory laws and the dictates of Article VII, section 1 of the Minnesota Constitution."  (Doc. No. 82 at 6.)

On its face, the plain language of the Minnesota Constitution prohibits individuals "under guardianship" from voting.  *See* Minn. Const. art. VII, § 2 (1857) ("[N]o person under guardianship . . . shall be entitled or permitted to vote at any election in this State"); Minn. Const. art. VII, § 1 (1974) ("The following persons shall not be entitled or permitted to vote at any election in this state . . . a person under guardianship . . . ."). Given, however, that the Minnesota Constitution, in its original and amended forms, does not define the term "person under guardianship," the Minnesota Supreme Court has held that the regulation of questions of guardianship are left to the legislature.  *State of Minnesota ex rel. Pearson v. Probate Court of Ramsey Cnty.*, 287 N.W. 297, 299 (Minn. 1939) ("The constitution does not specifically state what class of persons are subject to guardianship but leaves the regulation of that question to the legislature."), *aff'd sub nom. State of Minnesota ex rel. Pearson v. Probate Court of Ramsey Cnty.*, 309 U.S. 270 (1940).  Moreover, since the right to vote "in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right

15

of citizens to vote must be carefully and meticulously scrutinized." *Missouri Prot. & Advocacy Series, Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007), quoting *Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621, 626 (1969). The Court would suggest, as did the Eighth Circuit in *Missouri Protection*, that if, as Plaintiffs here contend, the appointment of a full or unlimited guardian categorically denies an individual of the right to vote because he or she has been "adjudged incapacitated," absent a "specific adjudicated finding showing the ward knows the nature and effect of his or her vote," such an interpretation of the Minnesota Constitution and statutes would not withstand close constitutional scrutiny if challenged. (*See* Doc. No. 82 at 1); *Missouri Prot. & Advocacy Series, Inc.*, 499 F.3d at 808-09.

The statutory framework in Minnesota, including the 2003 adoption of the Uniform Guardianship and Protective Proceedings Act ("UGPPA"), leaves little doubt as to the meaning of "guardianship" (and the term "person under guardianship"),[13]

---

[13]   A number of statutory provisions illustrate the legislature's clear intent with respect to the definition of guardianship. For example, Minn. Stat. § 524.5-120, entitled "Bill of Rights for Wards and Protected Persons," identifies the rights retained by persons under guardianship and specifically states that a ward retains the right to vote unless that right is restricted by a court. *See* Minn. Stat. § 524.5-120(14). Additionally, Minn. Stat. § 524.5-310(a)-(c) discusses the goals for guardianship and the findings required for a court-ordered guardianship. *See, e.g,* Minn. Stat. § 524.5-310(c) ("The court shall . . . , whenever feasible, make appointive and other orders that will encourage the development of the ward's maximum self-reliance and independence. Any power not specifically granted to the guardian, following a written finding by the court of a demonstrated need for that power, is retained by the ward."). Also importantly, the legislature has imposed a number of statutory obligations and responsibilities upon guardians, including specific reporting requirements with respect to a ward's right to vote. *See, e.g.,* Minn. Stat. § 524.5-310(g) ("Each year . . . a guardian shall send or deliver to the ward and to interested persons of record with the court . . . notice of
(Footnote Continued on Next Page)

especially upon examination of its history.[14]  The applicable statutory provision requires

an individual found to be "incapacitated" by a probate court to be placed under

guardianship.[15]  *See* Minn. Stat. §§ 524.5-102, subd. 6.  In addition to finding incapacity,

however, a court must also find that there are no less restrictive means to meet the

individual's identified needs and appropriately limit the scope of guardianship as

necessary.  Minn. Stat. §§ 524.5-310(c) ("The court shall grant to a guardian only those

powers necessitated by the ward's limitations and demonstrated needs . . . [and] [a]ny

---

(Footnote Continued From Previous Page)
the status of the ward's right to vote."); Minn. Stat. § 524.5-316(a) (requiring
guardians to submit written reports to the court "on the condition of the ward at least
annually" and outlining the requirements of such reports); *see also* Minn. Stat.
§ 524.5-313(b) (limiting the powers of guardians to only those "necessary to provide for
the demonstrated needs of the ward").

[14]     The amicus brief filed by the Minnesota Disability Law Center and the Arc
Minnesota provides a comprehensive overview and history of Minnesota guardianship
law.  (*See generally* Doc. No. 76.)  The amicus brief also discusses the history relating to
the passage of the Americans with Disabilities Act ("ADA") (1990) as well as the Voting
Rights Act.  (*See id.*)  In passing the ADA, Congress acknowledged that society has
historically isolated and segregated individuals with disabilities and that discrimination
against individuals with disabilities continues to persist in many critical areas, including
voting.  *See* 42 U.S.C. § 1210(a)(2-3).  Also, the Voting Rights Act states that "[a]ny
voter who requires assistance to vote by reason of blindness, disability, or inability to
read or write may be given assistance by a person of the voter's choice, other than the
voter's employer or agent of that employer or officer or agent of the voter's union."
42 U.S.C. § 1973aa-6.

[15]     An individual can be found incapacitated if the court finds that the individual "is
impaired to the extent of lacking sufficient understanding or capacity to make or
communicate responsible personal decisions, inability to meet personal needs for medical
care, nutrition, clothing, shelter, or safety, even with appropriate technological
assistance."  Minn. Stat. §§ 524.5-102, subd. 6.

power not specifically granted to the guardian, following a written finding by the court of a demonstrated need for that power, is retained by the ward.").

Subjecting an individual to "guardianship" under Minnesota law does not automatically implicate an individual's right to vote.  In fact, pursuant to Minnesota statute, persons under guardianship are presumed to retain the right to vote unless otherwise ordered by a court.  Minn. Stat. § 201.014, subd. 2(b); *see also* Minn. Stat. §§ 524.5-313(c)(8).  Contrary to Plaintiffs' assertion that Minnesota courts fail to make an individualized determination of a ward's capacity to vote (*see* Doc. No. 82 at 2-3), the law requires a judicial finding of incapacity before a court may prevent a disabled individual from voting.  *See, e.g.* Minn. Stat. §§ 524.5-310, 524.5-120(14).  Notwithstanding the state constitution's apparent categorical ban on the rights of persons "under guardianship" to vote, a ward is presumed to retain the right to vote as set forth by Minnesota statute.  (*See id.*; Minn. Const. art VII, § 1.)  Not unlike the process provided in Missouri, the judicial proceeding in Minnesota "to determine whether a guardian should be appointed is individualized and protective of civil liberties."  *See Missouri Prot. & Advocacy Series, Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007).  Absent a specific determination by a court that the individual lacks the capacity to vote, full voting rights are preserved under Minnesota law.  *See id.* at 809 ("[P]robate courts retain the authority to preserve a ward's right to vote as part of the statutory mandate to minimize deprivation of a ward's liberty.").  Thus, the constitutional prohibition against voting based on guardianship status applies only when there has been an individualized judicial finding of incapacity to vote.  *See id.* at 808-09.

3.      *Process Claims*

Plaintiffs also seek to address both "the lack of process to challenge prior to an EDR ballot being counted related to people under unlimited guardianships"[16] and "the lack of required process by the probate courts to make independent determinations of a potential ward's mental capacity to know the nature and effect of voting versus and juxtaposed to the court's finding a person totally lacking the mental capacity regarding other areas of that person's life that required the petition for guardianship in the first instance (including existing inconsistencies within court orders)."  (Doc. No. 82 at 6.)

Despite Plaintiffs' claim of an absence of sufficient notice and a right to be heard in the judicial proceedings relating to guardianship, both notice and a right to be heard are part of the guardianship process.  *See* Minn. Stat. §§ 524.5-307(b) ("Any person may request permission to participate in the proceeding."), 524.5-308 (requiring notice to the respondent, persons listed in the petition, and "interested persons").  Additionally, the initial petition for guardianship must include a description of "the nature and extent of the respondent's alleged incapacity" and either a list of the limited powers to be granted to the guardian or an explanation of "why limited guardianship is inappropriate."  Minn. Stat. § 524.5-303(8), (9).  Notice of the petition must be personally served on the respondent and all other persons named in the petition.  Minn. Stat. §§ 524.5-308(a)-(b).

---

[16]     The Court notes that the term "unlimited" guardianship is utilized in Plaintiffs' briefing to describe guardianships wherein "the guardian makes all the decisions for the ward."  (Doc. No. 82 at 1.)  While not specifically defined by statute, relevant Minnesota guardianship law distinguishes between limited and unlimited guardianships.  *See, e.g.,* Minn. Stat. §§ 524.5-303, 524.5-310.  *But see* Minn. Stat. § 524.1-201(26).

The proposed ward also has the right to be represented by counsel throughout the guardianship proceedings, and the state court is required appoint counsel to represent the respondent if none is otherwise provided. *See* Minn. Stat. § 524.5-304(b). The court may then only appoint a guardian if it finds, by clear and convincing evidence, that the respondent is an "incapacitated person" whose "identified needs cannot be met by less restrictive means." Minn. Stat. §§ 524.5-310(a).

In addition to the protections provided by the guardianship statutes, Minnesota voting statutes require the Statewide Voter Registration System ("SVRS") to be updated when the guardianship of a ward previously registered to vote is lifted or removed. Minn. Stat. § 201.15. This reporting process provides regular notice to the secretary of state of relevant changes in guardianship status for those individuals-whose right to vote has been revoked or reinstated. *See id.*

Plaintiffs argue that the retention of the right to vote by James Stene resulted from a "procedural defect" in the judicial guardianship process. (Doc. No. 82 at 2.) Plaintiffs do not assert, however, that any Defendant was involved in the conservatorship proceedings or that any interested party was denied notice of the proceedings or an opportunity to be heard. Also notably absent from Plaintiffs' Amended Complaint is an allegation that Sharon Stene challenged James Stene's capacity to vote in any way during the conservatorship proceedings before the Crow Wing County District Court. (*See* Am. Compl. ¶¶ 9, 53, 54, Ex. C.) Of course, because his right to vote had not been revoked (but in fact had been specifically preserved) by the court at the time of the election, James

Stene was eligible to vote when he appeared at the polls and cast his ballot.  (*See id.*, Ex. C.)

In summary, the Amended Complaint must be dismissed because Plaintiffs have failed:  (1) to state a claim upon which relief may be granted; (2) to exhaust state law remedies; and (3) to allege a valid constitutional harm with respect to Minnesota's voter eligibility provisions for persons under guardianship.

**III.   Motion for Summary Judgment**

Plaintiffs have also moved for summary judgment against Defendants.  Because the Court grants the motions to dismiss, the Court denies as moot Plaintiffs' motion for summary judgment.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.      Defendants Laureen E. Borden and Donald F. Ryan's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (Doc. No. [5]) is **GRANTED**.

2.      Defendants John J. Choi and Joe Mansky's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (Doc. No. [8]) is **GRANTED**.

3.      State Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No [10]) is **GRANTED**.

4.      Defendants Dennis J. Freed and Janet Reiter's Motion to Dismiss Plaintiffs' Amended Complaint Under Fed. R. Civ. P. 12(b)(1), (6) (Doc. No [28]) is **GRANTED**.

5.      Plaintiffs' Motion for Summary Judgment (Doc. No. [13]) is **DENIED AS MOOT**.

6.      Plaintiffs' First Amended Complaint for Injunctive Relief (Doc. No. [3]) is

**DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 17, 2012                     s/Donovan W. Frank
                                            United States District Judge